**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000184
29-NOV-2013
11:36 AM**

NO. CAAP-13-0000184

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MOANA KEA KLAUSMEYER-AMONG, ROBERT PALMER,
and JASON ELLIS, Plaintiffs-Appellants,
v.
HONOLULU CITY COUNCIL, and CITY AND COUNTY OF HONOLULU,
DEPARTMENT OF PLANNING AND PERMITTING, Defendants-Appellees
and
JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5,
DOE PARTNERSHIPS 1-5, DOE GOVERNMENT AGENCIES 1-5,
and DOE ENTITIES 1-5, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-1480)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Plaintiffs-Appellants Moana Kea Klausmeyer-Among,
Robert Palmer, and Jason Ellis (collectively, Plaintiffs),
proceeding pro se, appeal from (1) the "Order Granting Defendants
Honolulu City Council and City and County of Honolulu Department
of Planning and Permitting's Motion for Partial Dismissal of
Plaintiffs' Verified Complaint Filed May 24, 2012 and for a More
Definite Statement" entered October 31, 2012 (Dismissal Order 1),
and (2) the "Order Granting Defendants Honolulu City Council and
City and County of Honolulu Department of Planning and
Permitting's Motion for Dismissal of Plaintiffs' More Definite
Statement of Counts 4, 5, 12, and 15 of Plaintiff's Verified
Complaint Filed May 24, 2012, Filed October 24, 2012" entered

February 15, 2013 (Dismissal Order 2). Both orders were entered in the Circuit Court of the First Circuit[1] (circuit court).

On appeal, Plaintiffs contend the circuit court erred, under Hawaii Revised Statutes (HRS) §§ 205A-5 (2011 Repl.) and 205A-6 (2011 Repl.), when it dismissed their complaints for failing to state a claim for which relief can be granted.

## I. BACKGROUND

On October 4, 2011, the City and County of Honolulu Department of Planning and Permitting (DPP) recommended that the Honolulu City Council (City Council) approve the State of Hawaii Department of Transportation's (DOT or Applicant[2]) application for Special Management Area Use Permits (SMA Permits) for the Farrington Highway Replacement of Makaha Bridges No. 3 and No. 3a Project (Makaha Bridges Project). On April 3, 2012, the City Council approved the SMA Permits.

On May 24, 2012, Plaintiffs filed a "Verified Complaint for Injunctive, Equitable, and Other Relief" against the City Council and the DPP (collectively, Defendants). Plaintiffs requested injunctive relief under "HRS [§] 205A-6 [p]rovisions, and other applicable rights to relief," in the form of overturning or otherwise revoking City Council Resolution No. 11-282.[3] Plaintiffs' complaint raised 15 counts. Dismissal Order 1 dismissed, with prejudice, all counts except counts 4, 5, 12, and 15, for failing to state a claim upon which relief could be granted. The circuit court ordered Plaintiffs to provide a more definite statement of the non-dismissed counts.

Plaintiffs' "First Amended Complaint" restated counts 4, 5, 12, and 15 and requested an "immediate INJUNCTION barring applicants from proceeding in any manner to initiate condemnation or bring eminent domain proceedings against Plaintiffs."

---

[1]    The Honorable Edwin C. Nacino presided.

[2]    "DOT" and "Applicant" also includes R.M Towill Corporation, Applicant's agent.

[3]    Resolution No. 11-282 approved the SMA Permits for the Makaha Bridges Project.

Plaintiffs also requested an "Order [requiring the] applicants to release ALL data and studies in their entirety, including preliminary, final, changed or initial studies, during the 9 year design process for the Makaha Bridge Project[,]" and an order to remove Kili Drive from "the current FEMA designated Flood Way, or at minimum the portion of Kili Drive which is not privately owned by HRT Kili Drive LLC and uses an easement over and across the Defendants owned parcel to connect to Farrington Highway . . . ." Dismissal Order 2 dismissed the remaining counts, without prejudice, for failure to state a claim for which relief could be granted.

## II. STANDARD OF REVIEW

"A trial court's ruling on a motion to dismiss is reviewed de novo." <u>Kamaka v. Goodsill Anderson Quinn & Stifel</u>, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

## III. DISCUSSION

A complaint should only be dismissed for failure to state a claim, per Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6), if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. <u>See</u> <u>Cnty. of Kaua'i ex rel Nakazawa v. Baptiste</u>, 115 Hawai'i 15, 24, 165 P.3d 916, 925 (2007). Our review is limited to the allegations of the complaint, and we assume the facts of the complaint are true. <u>Pavsek v. Sandvold</u>, 127 Hawai'i 390, 402, 279 P.3d 55, 67 (App. 2012). While a complaint need not provide detailed factual allegations, a plaintiff must provide more than labels and conclusions, or formulaic recitations of the elements of a cause of action, to establish the grounds for entitlement to relief. <u>See</u> <u>id.</u> at 403, 279 P.3d at 68. Plaintiffs' complaint and amended complaint raise several allegations but fail to state a claim upon which relief may be granted.

> Count 1: "Plaintiff(s) should not have their properties or any portions thereof subject to eminent domain or condemnation proceedings for a 'bridge replacement'

project."

Count 1 of the Complaint alleged that Plaintiffs' properties "are in immediate danger of having forced condemnation or eminent domain actions instituted against them, as threatened by DOT." Plaintiffs fail to provide any legal authority that requires the City Council to refrain from approving a SMA permit for projects that may require state condemnation of land.

**Count 2: "An Environmental Impact Statements (EIS) was required by State law, but [Applicant] performed a much less stringent Environmental Assessment (EA)."**

The Coastal Zone Management Act, HRS Chapter 205A (Chapter 205A), imposes special controls on the development of real property along shoreline areas "to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii." HRS § 205A-21 (2011 Repl.). Any development within these special management areas requires a use permit. HRS § 205A-28 (2011 Repl.).

Chapter 205A authorizes counties to administer the permit system and requires the counties to adopt procedures for issuing permits. HRS §§ 205A-23 (2011 Repl.), -26 (2011 Repl.), -29 (2011 Repl.). The Honolulu City Council administers the permit system for the City and County of Honolulu. See Sandy Beach Defense Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 365, 773 P.2d 250, 254 (1989). Revised Ordinances of Honolulu (ROH) § 25-3.3 (1987), authorized by Chapter 205A, provides: "Any proposed development . . . requiring a [SMA Permit] shall be subject to an assessment by the agency in accordance with the procedural steps set forth in Chapter 343." Count 2 alleged the City Council and DPP failed to comply with HRS Chapter 343, the Hawaii Environmental Protection Act (HEPA), by issuing the SMA permit for the Makaha Bridges Project.

HRS § 343-5(a)(1) (2010 Repl.) requires an EA for actions that propose the "use of state or county lands or the use of state or county funds[.]" HRS § 343-5(a)(3) requires an EA

4

for actions that propose any use within a shoreline area. The Makaha Bridges Project is an action that proposes the use of state funds and is located within a shoreline area.

An EA is an informational document prepared by either the agency proposing an action or a private applicant and is used to evaluate the possible environmental effects of a proposed action. See HRS § 343-2 (2010 Repl.). A "finding of no significant impact" is the "determination based on an [EA] that the subject action will not have a significant effect and, therefore, will not require the preparation of an environmental impact statement." Id.

The "accepting authority" is the "final official or agency that determines the acceptability of the EIS document." Hawaii Administrative Rules (HAR) § 11-200-2, authorized by HRS § 343-6 (2010 Repl.). Whenever an agency proposes an action that uses state lands or funds, the accepting authority is the governor or an authorized representative. HAR § 11-200-04(A)(1), authorized by HRS § 343-6. The DOT, presumably as the governor's authorized representative, is the accepting authority, and as the applicant, the DOT is also the proposing agency.[4]

HAR § 11-200-9 provides in part:

§11-200-9 Assessment of Agency Actions and Applicant Actions

    A.    For agency actions, except those actions exempt from the preparation of an environmental assessment pursuant to section 343-5, HRS, or section 11-200-8, the proposing agency shall:

           1.  Seek, at the earliest practicable time, the advice and input of the county agency responsible for implementing the county's general plan for each county in which the proposed action is to occur, . . . as well as those citizen groups and individuals which the proposing agency reasonably believes to be affected;

           2.  Identify the accepting authority pursuant to section 11-200-4 and specify what statutory conditions

---

[4]    We take judicial notice of the DOT's designation as "accepting authority" and "proposing authority" from the Final EA as a matter of public record that is easily verifiable. See Almeida v. Correa, 51 Haw. 594, 465 P.2d 564 (1970). EA available at: http://oeqc.doh.hawaii.gov/Shared%20Documents/EA_and_EIS_Online_Library/Oahu/2010s/2011-05-23-FEA-Makaha-Bridges-3-and-3A-Replacement.pdf

under section 343-5(a), HRS, require the preparation of an environmental assessment;

3. Prepare an environmental assessment pursuant to section 11-200-10 of this chapter which shall also identify potential impacts, evaluate the potential significance of each impact, and provide for detailed study of significant impacts;

4. Determine, after reviewing the environmental assessment described in paragraph (3), and considering the significance criteria in section 11-200-12, whether the proposed action warrants an anticipated negative declaration or an environmental impact statement preparation notice, provided that for an environmental impact statement preparation notice, the proposing agency shall inform the accepting authority of the proposed action[.]

(Emphases added.) While DPP recommended approval of the Makaha Bridges Project SMA Permits, the City Council approved the SMA permit, and the SMA permit process required HEPA compliance, the DOT is ultimately responsible for the project's HEPA compliance. See HAR § 11-200-9(A)(4). "When a conflict of interest may exist because the proposing agency and the agency making the [determination of whether an EIS is needed] are the same, the [Office of Environmental Quality Control (OEQC)] may review the agency's determination[.]" HRS § 343-5(c)(5) (Supp. 2012). Since the DOT and OEQC are not defendants, Plaintiffs have failed to state a claim for relief as to Count 2.

**Count 3: "Large change of project design and scope, was ordered in March 2010, at a cost of over $600,000.00 to do additional studies, change the design, and additional survey's [sic] and hydraulic and hydrological studies . . . almost a year AFTER the required Public review period had expired following the Draft EA published in May 2009."**

Plaintiffs contend they "called upon City Council to order the SMA project applicants to publish updated Draft EA with the new studies and design allowing for another Public review period, since the project had changed so much the original Draft EA did not satisfy the public review requirements and there was no public review after the vast changes were made to the project."

The DOT, as proposing agency, is responsible for publishing the draft EA, responding to public comments and revising the EA as necessary. See HAR § 11-200-9(A)5-8. Plaintiffs provide no legal authority to support their contention against the DPP or City Council.

**Count 4: "DPP failed to hold a hearing on the accompanying Shoreline Setback Variance associated with the Makaha Bridges SMA in the Waianae District as required by ROH Chapter 25 provisions."**

Plaintiffs' First Amended Complaint alleged that the City violated ROH § 25-5.3(b) by failing to hold the public hearing on the Shoreline Setback Variance (SSV) for the Makaha Bridges Project in the area of the proposed development. "Plaintiffs Palmer and Ellis' rights were violated by Defendant's [sic] as the above mentioned SSV was held on March 21, 2012 at the Defendants DPP Downtown Honolulu office."

ROH § 25-5.3 (1987 Supp.) provides:

Sec. 25-5.3      Public hearings.

(a)    The agency . . . shall hold a public hearing on the application <u>for a special management area use permit</u> at a date set no less than 21 nor more than 60 calendar days after the date on which the application is accepted[.]

(b)    <u>The public hearing shall be held in the area in which the development is proposed. Whenever possible, the public hearing shall be held jointly and concurrently with any other hearing required for the same development</u>.

(Emphasis added.) The SSV and the SMA hearings were both required for the Makaha Bridge Project. However, Plaintiffs fail to allege facts to support the contention that holding these hearings jointly and concurrently was possible; ROH § 25-5.3(b) requires such consolidation only when possible.

Moreover, ROH § 23-1.11 addresses public hearings on SSVs and does not require public hearings to be held in the area in which the development is proposed:

Sec. 23-1.11      Public hearings on variance applications.

(a)    The director shall hold a public hearing on each variance application, except that the director may waive the hearing on variances for the following:
        . . . .

7

(b)    The director shall give reasonable notice of the public hearing on any variance application to the applicant, to any person or agency that requested the public hearing, and to abutting property owners and any other person who requested notice.

Count 4 was properly dismissed because it is supported by neither facts nor law. See Justice v. Fuddy, 125 Hawai'i 104, 108, 253 P.3d 665, 669 (App. 2011), (as corrected Apr. 26, 2011) (A dismissal under HRCP Rule 12(b)(6) is warranted only if the claim is clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim.)

**Count 5: "Kili Drive is an illegal berm, was never completed, has been an illegal road for more than 40 years, and is a de facto built up berm, dividing the FEMA AEF zoned Flood Way in Makaha Valley, and was connected to Farrington Highway without proper drainage."**

Plaintiffs contend Kili Drive is an illegal berm because Land Court Order of 1951 No. 10157 "is on deeds held by Defendants and the owners of Kili Drive LLC, which as an Encumbrance to the deeds, states: 'In Favor of Free Flowage Of Water Through The Natural Stream Beds'." The full contention is difficult to discern, but appears to be: (1) Kili Drive was constructed on land with the preceding encumbrance; (2) Kili Drive violates that encumbrance by inhibiting the natural flow of water; (3) Kili Drive dams a federal flood way; (4) Kili Drive thus presents a health and safety threat to adjacent landowners; (5) Kili Drive never received a permit and DPP negligently allowed it to connect to Farrington Highway, thus creating a conflict of interest for the DPP in approving SMA Permits for Makaha Bridges Project; (6) the DPP and City Council's approval of the Makaha Bridges Project reinforced this "illegality."

Plaintiff's point to exhibits 8-11, 15, and 26 to "prove the illegality of Kili Dr. from the illegal permitting process[.]" However, Plaintiffs fail to provide any legal authority showing the existence of specific legal duties owed to Plaintiffs by the DPP or City Council. Plaintiffs also fail,

8

despite their exhibits, to allege facts that could then show the DPP or City Council violated those specific duties by approving the SMA Permits.

> **Count 6: "The DPP intentionally misrepresented a material fact in response to Leeward District Councilman Tom Berg's questioning about the permit history of Kili Drive: Intentional mis-representation of critical material facts made by DPP to Tom Berg and City Council members."**
>
> Plaintiffs contend:
>
>> Before the City Council voted on the resolution 11-282, Leeward District City Councilman Tom Berg questioned the DPP Deputy Director at the public hearing as to whether Kili Drive was properly permitted from its connection to Farrington Highway all the way up to the Makaha Towers Condominiums. . . . [T]he DPP Director misrepresented the material fact that Kili Drive, was all prim and proper, when in fact Kaena Road, or Kili Drive, under either name, was never supposed to connect to Farrington Highway, was in violation of the Land Use Policy, and was NEVER completed properly, or with proper drainage or improvements.

Plaintiffs fail to provide any legal authority that would entitle them to relief against the Defendants for the alleged misrepresentation.

> **Count 7: "City Council did not follow own procedures re: Zoning Committee adopted minutes."**

"The . . . City Council had instructed the applicant DOT to submit to FHWA [Federal Highway Administration] plans for the Bridge 3 channel design WITHOUT the objected rip rap to see if DOT could get federal approval for a design without the rip rap embankments." The relevant committee notes state:

> Committee Chair Anderson requested that the applicant resubmit a letter and plans to the FHWA without the riprap to deem if it [sic] a necessary component for the bridge replacement. He further requested that copies of the transmittal with its attachments and the response from the FHWA be forwarded to the Committee.

Plaintiffs allege that the DOT failed to comply with this request and the City Council proceeded as if the request had never been made. Assuming this allegation is true, Plaintiffs fail to provide any legal authority that would give rise to a cause of

action against the Defendants or enable a court to grant the requested relief.

Plaintiffs also contend the City Council's failure to enforce its own request was a denial of due process because Plaintiffs relied on the assumption that committee instructions and adopted minutes were binding on applicants. "Both the federal and state Due Process Clauses include protection from deprivation of property without due process of law. These guarantees apply when a constitutionally protected property interest is at stake. . . . A property interest will be seen to exist if discretion is limited by the procedures in question, that is, whether the procedures, if followed, require a particular outcome." Brescia v. North Shore Ohana, 115 Hawai'i 477, 500-01, 168 P.3d 929, 952-53 (2007) (internal quotation marks and citations omitted). Plaintiffs fail to point to any procedure that the City Council was legally obligated to follow and which would have required a particular outcome regarding the council's request for an alternate proposal.

> **Count 8: "The Makaha Stream favors the North West direction of the lower reaches of Makaha Valley. This project seeks to force the Makaha Stream to the directly opposite side of the lower valley, to the South East side of Makaha Valley, directly against its natural flow direction;" and Count 9: "The entire project design and alteration of Makaha Stream go directly against the Land Court Order No. 10157 filed March 7, 1951."**

In Counts 8 and 9, Plaintiffs contend the Makaha Bridges Project, as approved by the City Council, violates encumbrances on the underlying land:

> The design on its face is obviously designed to protect HRT Kili Drive LLC's embankment, which is zoned AEF Flood Way. The rip rap on the Kaena Point side is curved toward the center of the Makaha Stream and will greatly skew the stream toward the AE zoned residences on the Waianae side of the stream. Mr. Ikaika Anderson, during City Council Zoning and Planning Committee hearing, asked the [Applicants], if with all the new concrete bridges being constructed all across the State, whether they could point to a similar curved inward rip rap design for any other bridge? They could not produce a single example. The reason

10

is that there doesn't exist anywhere such an asinine design, to build a 15 Million dollar longer span concrete bridge and then block off half of the channel approaching the bridge with rock rip rap! Plaintiffs hope this Court will ask the same question, whether such a channel design as seen mauka of proposed Bridge 3 exists anywhere, in ANY State, because Plaintiffs don't believe such a design would ever be put forth by any Bridge designer. The whole purpose of this obviously strange design is to protect HRT Kili Drive LLC embankment and skew the Makaha Stream toward the residences, which is dead wrong wrong wrong, and violates the 1951 Land Court Order, which Plaintiffs hereby invoke.

. . . .

This covenant appears on the [City & County] parcel, and the HRT Kili Drive LLC parcel, across from Plaintiffs properties on the other side of Makaha Stream [Exhibits 22 City & County parcel TCT and Exhibit 23 HRT Kili Drive LLC parcel Deed]

DOT proposes to purchase portions of the above properties currently owned by [City & County] of Honolulu, and HRT Kili Drive LLC, and to then alter the Makaha Stream channel on that land, which Plaintiffs oppose, and Plaintiffs hereby invoke and rely upon this Land Court Order, that any alteration of the Makaha Stream channel will be a violation of said land Court Order.

City Council, prior to voting to approve the project, received testimony and was provided a copy of Land Court Order No. 10157, filed March 7, 1951; and City Council was advised that Plaintiffs and other property home owners along the Makaha Stream opposed any Makaha Stream alteration or realignment and the adding of un-natural rock rip-rap reinforced embankments along the Makaha Stream channel, including the curved inward design, which artificially blocks the natural flowage of Makaha Stream . . . .

The 1951 Land Court Order appears to create an easement for the "[f]ree flowage of water through the natural stream beds," benefitting the State of Hawaii and burdening the City and County of Honolulu. Assuming the easement encumbers land underlying the Makaha Bridges Project, Plaintiffs fail to provide any legal authority that requires the City Council to refrain from approving a SMA permit for projects that may require state condemnation of encumbered land.

> **Count 10: The Hawai'i Supreme Court Decision No. 2956 issued on January 26[,] 1956 in David Orth Klausmeyer and Marie Blackwell Klausmeyer vs. Makaha Valley Farms Ltd; Makaha Beach Co. Ltd; Waianae Village Properties Ltd; and Capital Investments Ltd; established that one may not engage in activities or actions on one's property that could adversely over time lead to the**

failure or undermining of another owners adjacent or nearby property."

The rule of Klausmeyer v. Makaha Valley Farms, Ltd., 41 Haw. 287 (1956) is inapposite to the case at hand. The issue presented by Klausmeyer was whether a subdivision developer, who sold all but one lot for residential purposes, could commercially excavate sand from the remaining lot. Klausmeyer, 41 Haw. at 292-93. The supreme court issued an injunction restraining the developer because the excavation would, "if continued indefinitely, or to an unlimited extent, deprive the petitioners of the features of their lots which were the inducements for the purchase by them of such lots[.]" Id. at 342.

Here, the Defendants recommended and approved a state project to replace two bridges. Defendants are not subdivision developers. Plaintiffs do not allege the Defendants' representations induced them into purchasing their lots.

**Count 11: "City Council failed to address repeated misrepresentations in testimony of applicants and their consultants at public hearings, and misrepresentations in maps/design drawings submitted by applicants."**

Plaintiffs alleged the DOT made misrepresentations to the City Council during a public hearing on the SMAs and the City Council ignored the misrepresentations. Plaintiffs' Count 11 is an unsupported conclusion, stating in its entirety:

> Constituents in the project area brought to the attention of City Council that the applicants maps and drawings depicting the project design showed many misrepresentations of the Makaha Stream center, as shown on maps submitted to DPP and to City Council. The DPP and City Council ignored these misrepresentations of project drawings, and did not question applicants whatsoever as to the drawings submitted.

> Director of DPP testified Oct. 4, 2011 the Makaha bridges project was "not designed to address any flooding issues" but in fact applicants seek to submit a drainage report and new flood maps that eliminate half the flood plain in Makaha Valley, and change the land zoning all the way up the valley, greatly benefitting HRT Kili Drive LLC and other large landowners to the detriment and loss of land to Plaintiffs.

Plaintiffs do not allege any facts to support the conclusion that

12

the Defendants made or were aware of any incorrect or misleading representations. Moreover, even assuming a misrepresentation was made, Plaintiffs fail to provide a legal authority to support their requested relief.

> **Count 12: "[Defendants] failed to apply EXISTING laws as required by HRS 205A-2(c)(7)(A) in approving the project resolution[.]"**

> Plaintiffs Complaint contended:

>> The existing laws and policies in effect are to be enforced and applied to SMA projects. The existing law is the Land Court Order No, 10157, of March 7, 1951, and the Supreme Court decision of 1956, and the current EIS requirements, and current DPP public review policies and procedures for holding hearings in the proper district where the development is to take place.

Plaintiffs' "First Amended Complaint" asserted the same position, which restates counts 4, 9, and 10. For the reasons previously discussed, Count 12 fails to state a claim for which relief may be granted.

> **Count 13: "Failure of DPP to disclose CONFLICT of INTEREST to City Council or public."**

> Plaintiffs contend DPP had a conflict of interest that it failed to disclose to the City Council during a public hearing on the SMAs:

>> DPP failed to reveal to City Council a bias and conflict of interest in evaluating [Applicants] project and design, in that DPP and DOT both benefit greatly by the proposed design, while Plaintiffs are threatened with condemnation and flooding. The City and County of Honolulu, as owner of the parcel that allowed the improper connection of Kili Drive to Farrington Highway, and failed to ensure proper drainage and engineering of said connection, also have a conflict of interest, or bias to favor DOT and DPP in this matter, to detriment of Plaintiffs, that was not disclosed to constituents or Plaintiffs by City Council at the public hearings on this project.

The alleged conflict of interest is unsupported by the record. Plaintiffs have not provided legal authority to support their claim that Kili Drive is illegal or illegally connects to Farrington Highway.

> **Count 14: "Applicant DOT has throughout the entire public review process and upon specific requests made, refused to release Hydraulic, Hydrological, Survey, and Drainage and Flood studies and data, thus Plaintiffs and others have been unable to ascertain the true nature of the project impacts to their properties and the area."**

Plaintiffs fail to provide legal authority that Defendants are liable for the DOT's alleged non-disclosures. Additionally, Plaintiffs did not allege facts sufficient to support their conclusion that the lack of data from such surveys and studies left the DPP or City Council unable to ascertain the true nature of the project's impact.

> **Count 15: "HRS Chapter 205A-29(a)(9c)(6)(C) [sic] section violated in issuance of SMA permit by DPP and City Council."**

Plaintiffs contend the City Council violated HRS § 205A-2(c)(6)(C) by accepting the Makaha Bridges Project Design and granting the SMAs. Section 205A-2(c)(6)(C) requires the City Council to "[e]nsure that developments comply with requirements of the Federal Flood Insurance Program [(FFIP)]."

Plaintiffs' "First Amended Complaint" failed to identify either (1) the requirements of the FFIP that were violated by the City Council or (2) conduct by the City that violated the unspecified requirements of the FFIP. Such unspecified allegations cannot provide Defendants with fair notice of what the claim is and the grounds upon which it rests. See Perry v. Planning Commission of Hawai'i Cnty., 62 Haw. 666, 685, 619 P.2d 95, 108 (1980) ("Modern judicial pleading has been characterized as 'simplified notice pleading.' Its function is to give opposing parties 'fair notice of what the ... claim is and the grounds upon which it rests.'") (internal quotation marks omitted).

## IV.   CONCLUSION

Accordingly, the Circuit Court of the First Circuit's (1) "Order Granting Defendants Honolulu City Council and City and County of Honolulu Department of Planning and Permitting's Motion for Partial Dismissal of Plaintiffs' Verified Complaint Filed May 24, 2012 and for a More Definite Statement" entered October 31, 2012, and the (2) "Order Granting Defendants Honolulu City Council and City and County of Honolulu Department of Planning and Permitting's Motion for Dismissal of Plaintiffs' More Definite Statement of Counts 4, 5, 12, and 15 of Plaintiff's Verified Complaint Filed May 24, 2012, Filed October 24, 2012" entered February 15, 2013 are affirmed.

DATED:   Honolulu, Hawaiʻi, November 29, 2013.

On the briefs:

Moana Kea Klausmeyer-Among
Robert Palmer
Jason Ellis
Plaintiffs-Appellants pro se.

Don S. Kitaoka
Brad T. Saito
Deputies Corporation Counsel,
City and County of Honolulu
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

15